UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

_____

| | | |
|---|---|---|
| BERRY SCOTT BOLIN, | ) | C/A No.: 4:15-cv-1523-DCN-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **Report and Recommendation** |
| | ) | |
| | ) | |
| WARDEN, LEE CORRECTIONAL | ) | |
| INSTITUTION, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner, Berry Scott Bolin, (Petitioner), filed a petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254[1] on April 8, 2015. (Doc. #1). Petitioner is

represented by counsel. (Doc. #24). Respondent filed a motion for summary judgment

on September 4, 2015, along with a return and memorandum. (Docs. #19 and #20).

The undersigned issued an order filed September 8, 2015, pursuant to Roseboro v.

Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary

judgment procedure and the possible consequences if he failed to respond adequately.

(Doc. #21). Petitioner, through habeas counsel Elizabeth Franklin-Best, filed a

_____

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate
Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(c),
DSC. Because this is a dispositive motion, this report and recommendation is entered for review
by the district judge.

response in opposition on November 13, 2015. (Doc. #29).

## PROCEDURAL HISTORY

The procedural history as set forth by the Respondent has not been seriously disputed by the Petitioner in his response. Therefore, the undersigned will set out the undisputed procedural history, in part, as set forth by the Respondent.

Petitioner is currently incarcerated in Lee Correctional Institution. The York County Grand Jury indicted Petitioner during the May 2006 term for one count of murder (2006-GS-46-1595), one count of assault and battery with intent to kill (2006-GS-46-1596), two counts of assault with intent to kill (2006-GS-46-1598 & -1599), and one count of discharging a firearm into an occupied vehicle (2006-GS-46-1600). Petitioner was represented by Leland Greeley, Esquire. Appearing on behalf of the State was Solicitor Tommy Pope and Deputy Solicitor Willy Thompson of the Sixteenth Judicial Circuit Solicitor's Office.  Petitioner's jury trial began on August 28, 2006, before the Honorable John C. Hayes, III, South Carolina Circuit Court Judge, and a jury.  Petitioner's co-defendant, Ronald Lee Owens, was originally going to be tried along with Petitioner, but Owens pleaded *nolo contendere* to three charges after the jury had been selected, and Judge Hayes sentenced Owens to ten years suspended to five years on each charge to run concurrently.  Petitioner proceeded to a jury trial and was convicted by the jury of the lesser included offense of voluntary

manslaughter, the lesser included offense of assault and battery of a high and aggravated nature, two counts of the lesser included offense of assault of a high and aggravated nature, and discharging a firearm into an occupied vehicle. The jury found Petitioner not guilty of the possession of a pistol. Judge Hayes sentenced Petitioner to thirty years confinement for the voluntary manslaughter conviction and to ten years confinement for each of the remaining charges (two assaults of a high and aggravated nature, assault and battery of a high and aggravated nature, and discharging a firearm), to be served concurrently. Additionally, Judge Hayes ordered Petitioner to make restitution of $31,000 (App. 1806).

**Direct Appeal**

A timely Notice of Appeal was served on behalf of Petitioner, and an appeal was perfected.[2] On appeal, Petitioner was again represented by Leland Greeley. In his Final Brief, Petitioner raised two arguments. First, he argued the trial judge erred in denying Petitioner's request for the jury to be charged the legal presumptions contained in S.C. Code Ann. § 16-10-440. Second, he asserted the trial judge erred

---

[2] The State also appealed the trial court's decision quashing the indictment for the charge of possession of a pistol while under the age of twenty-one. (App. 182–248).

in denying the requested directed verdict of acquittal on all charges based on S.C.

Code Ann. § 16-10-450.  The State filed a Final Brief of Respondent.

The South Carolina Court of Appeals affirmed Petitioner's convictions in an

opinion filed February 5, 2009.  State v. Bolin, 381 S.C. 557, 673 S.E.2d 885 (2009).

The Remittitur was issued on February 23, 2009.

**PCR**

Petitioner filed his application for post-conviction relief (PCR) on February 1,

2010, arguing that trial counsel was ineffective for failing to adequately advise

Petitioner to accept the State's plea offer and for failing to challenge the trial court's

institution of restitution in the amount of $31,000.  The State served its return on June

30, 2010.

On December 30, 2011, Petitioner, through PCR counsel T. Micah Leddy, filed

a first amended application raising the following additional claims:

> GROUND A:    Petitioner was denied effective assistance of counsel
> at the trial stage of his case in violation of
> Petitioner's rights under the Sixth, Eighth, and
> Fourteenth Amendments of the U.S. Constitution.

> Supporting Facts: Counsel was deficient in not calling several
> witnesses who were present at the scene who would
> testify that they saw gunfire coming from the alleged
> victims' automobile, which would have bolstered
> Applicant's claim of self-defense immensely.

4

Counsel did put up a case in chief, which gave the State the last closing argument as well as opened the door to the State being able to argue that the Defense had no witnesses who could corroborate this theory of the defense.

GROUND B:    Petitioner was denied effective assistance of counsel at the trial stage of his case in violation of Petitioner's rights under the Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution.

Supporting Facts:    Counsel was deficient in failing to subpoena or otherwise obtain the videotape surveillance from the location where the alleged victims stopped their vehicle on the way to the police station, even though it was Counsel's contention at trial that they had disposed of weapons at the stop. The evidence is now forever lost.

GROUND C:    Petitioner was denied effective assistance of counsel at the trial stage of his case in violation of Petitioner's rights under the Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution.

Supporting Facts:    Counsel was deficient in his efforts to get Petitioner to accept the guilty plea offer of 15 years to manslaughter. Counsel was likewise deficient in failing to attempt to get the plea offer reinstated after the trial judge ruled that the "Castle Doctrine" statute did not apply to this case because the statute was prospective in its application only.

GROUND D:    Petitioner was denied effective assistance of counsel at the appellate stage of his case in violation of Petitioner's rights under the Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution.

Supporting Facts:    Counsel was ineffective in not filing a writ of

5

certiorari to the South Carolina Supreme Court.

(App. 297–99).  Soon thereafter Petitioner submitted a motion for leave to conduct limited discovery, and the State filed a return asking for a hearing on the matter.  On July 13, 2012, a hearing was held before the Honorable Lee S. Alford, South Carolina Circuit Court Judge, on the motion.  (App. 374–422).

An evidentiary hearing took place on October 11, 2012, before the Honorable Edgar W. Dickson, South Carolina Circuit Court Judge.  During the hearing, Petitioner  presented the testimony of multiple witnesses, including Willy Thompson, Roger Nivens, Eric Brown, and Leland Greeley (trial counsel). (App. 424–611).  Judge Dickson filed his order of dismissal on January 7, 2014, denying and dismissing the PCR application with prejudice.  (App. 8–45).

Thereafter, Petitioner submitted a Rule 59(e) motion, which was denied in an order filed February 17, 2014.

## PCR APPEAL

Petitioner filed an appeal from the dismissal of his PCR appeal and was represented by PCR counsel.  A petition for writ of certiorari was filed on Petitioner's behalf raising the following allegations:

I.  The PCR court erred in finding that trial counsel was not ineffective in failing to call a potential exculpatory witness after deciding to put up a defense case in chief, thereby losing last closing.

II.  The PCR court erred in finding that trial counsel was not ineffective in failing to subpoena or otherwise obtain videotape surveillance from American Auto Sales, where the alleged victims stopped their vehicle on the way to the police station when it was the defense's theory at trial that the purpose of the stop was to discard weapons.

III.  The PCR court erred in denying Petitioner's request to conduct an in-camera review of materials withheld by the State under a purported attorney work-product privilege when the materials were notes from witness interviews conducted by the Deputy Solicitor.

IV.  The PCR court erred in finding that trial counsel was not ineffective for failing to ascertain that the "Castle Doctrine" statute did not apply to the case.  This deficient representation led to Petitioner rejecting a 15 year plea offer in favor of relying on the Act that was clearly not applicable.

V.  The PCR court erred in denying Petitioner leave to amend his post-conviction relief application after the evidentiary hearing in order to conform the pleadings to the evidence adduce, which

　　　a.  Showed that the State had elicited false testimony from Holly McCarter because she did not switch seats as she testified in the State's case in chief.

　　　b.  Showed that trial counsel was ineffective in that he failed to even mention the police station video proving McCarter lied.

VI.  Trial counsel was deficient in failing to request a new jury following Petitioner's co-defendant pleading guilty after being

7

introduced to the jury.  Trial counsel failed to request a new jury or a curative instruction from the court explaining the non-testifying co-defendant's absence.

(Doc. # 19-3).  The State filed a Return.  (Doc. #19-4).

Petitioner's PCR action concluded upon the Supreme Court of South Carolina's denying the petition for writ of certiorari on March 18, 2015, and issuing its remittitur on April 3, 2015. (Doc. #s 19-5 and 19-6).

## HABEAS ALLEGATIONS

Petitioner raised the following allegations in his petition, quoted verbatim:

GROUND ONE:           Petitioner was denied effective assistance of counsel at the trial stage of his case in violation of Petitioner's rights under the Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution.

Supporting facts:     Counsel was deficient in not calling several witnesses who were present at the scene who would testify that they saw gunfire coming from the alleged victims' automobile, which would have bolstered Applicant's claim of self-defense immensely.  Counsel did put up a case in chief, which gave the State the last closing argument as well as opened the door to the State being able to argue that the Defense had no witnesses who could corroborate this theory of the defense.

GROUND TWO:           Petitioner was denied effective assistance of counsel at the trial stage of his case in violation of Petitioner's rights under the Sixth, Eighth, and Fourteenth Amendments of the

8

U.S. Constitution.

Supporting Facts: Counsel was deficient in failing to subpoena or otherwise obtain the videotape surveillance from the location where the alleged victims stopped their vehicle on the way to the police station, even though it was Counsel's contention at trial that they had disposed of weapons at the stop. The evidence is now forever lost.

GROUND THREE: Petitioner was denied effective assistance of counsel at the trial stage of his case in violation of Petitioner's rights under the Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution.

Supporting Facts: Counsel was deficient in his efforts to get Petitioner to accept the guilty plea offer of 15 years to manslaughter. Counsel was likewise deficient in failing to attempt to get the plea offer reinstated after the trial judge ruled that the "Castle Doctrine" statute did not apply to this case because the statute was prospective in its application only.

GROUND FOUR: The PCR court erred in denying petitioner's request to conduct an in-camera review of materials withheld by the state in violation of the Sixth and Fourteenth Amendmenst [sic] to the U.S. Constitution.

Supporting Facts: In response to Petitioner's subpoena for documents and evidence, the trial prosecutor withheld a large amount of material claiming a work-product privilege. Over petitioner's objection, the PCR court failed to require disclosure and failed to conduct an in-camera

9

review to make its own determination of whether disclosure was required.

GROUND FIVE:    The PCR court erred in denying petitioner leave to amend his post-conviction relief application after the evidentiary hearing in order to conform the pleadings to the evidence adduced, which

    a.    showed that the state had elicited false testimony from Holly McCarter because she did not switch seats as she testified in the state's case in chief; and

    b.    showed that trial counsel was ineffective in that he failed to even mention the police station video proving McCarter lied.

Supporting Facts:    The PCR court denied Petitioner's motion to amend his pleadings to conform to the evidence adduced at the PCR hearing.  App. P. 324.  Petitioner filed the Second Amended PCR application to add claims relating to testimony that was not brought out in any proceedings or documents prior to the PCR hearing.  See App. P. 322 (letter to PCR court in support of motion to amend and file Second Amended PCR).  The State objected, arguing that the Second Amended application would amount to a successive claim, barred under Arnold v. State, 309 S.C. 157, 420 S.E.2d 834 (1992), and that to allow the amended petition would prejudice the State.  The PCR court denied the motion to amend under SCRCP Rule 15(b) and cases related thereto.  App. P. 40.  Petitioner raised this issue in his Rule 59(e) motion to alter or amend in order to

preserve the issues raised in the Second Amended Application, which were not ruled upon by the PCR court.

GROUND SIX:          Trial counsel was deficient in failing to request a new jury following petitioner's co-defendant pleading guilty after being introduced to the jury. Trial counsel failed to request a new jury or a curative instruction from the court explaining the non-testifying co-defendant's absence.

Supporting Facts:     Following jury selection and argument on the applicability of the "castle doctrine" statute to this case, Petitioner's co-defendant, Lee Owens, pled guilty to his charges. Mr. Owens had been introduced to the jury panel along with Mr. Bolin. App. P. 626. After accepting Mr. Owens' plea and ruling on pre-trial motions, the jury was brought back into the courtroom, where they were told by the trial judge, "We worked yesterday on some legal matters, we worked some more this morning, and you will notice if you look to my right, that Mr. Owens and his counsel are not present anymore. The case is concluded as to them. We're simply going forward as to Mr. Bolin, so we haven't just been drinking coffee and doing crosswords. We've been doing some work and what we've done we hope will move the case along more promptly than had we not done the work we did."

There was no instruction from the judge as to why the case was "concluded as to Mr. Owens, and Mr. Owens was never called to testify at trial where he would have been subject to cross examination.

11

At the PCR hearing, the State objected to a line of questioning related to trial counsel's failure to request a new jury or, at a minimum, a curative instruction. App. P. 517. The PCR court allowed the questioning over the State's objection, and it was subject to thorough litigation by both sides. This claim, as noted by the PCR court, is based on ineffective assistance of counsel, and was more particularly stated in the Second Amended Application for PCR and raised in the Rule 59 motion to alter or amend when the PCR court denied leave to file the Second application. App. P. 518.

GROUND SEVEN:    Petitioner was denied his right to a fair trial, a right guaranteed by the Fourteenth Amendment to the United States Constitution as well as the South Carolina Constitution because the state elicited false testimony, failed to correct it, and argued it to the jury.

Supporting Facts:    The State elicited testimony from Holly McCarter that she was too hysterical to drive her vehicle to the police station upon learning that Bobby Hovis had been shot. The testimony of Ms. McCarter was that she was not driving the vehicle when it arrived at the Clover Police Department. This testimony is refuted by a video showing that she was in fact driving the car when it arrived at the station. Not only did the State elicit this testimony and fail to correct it, the State argued this point to the jury. This point is critical because the defense argued that there had been a gun in the victims' car, and that they had stopped at American Auto Sales on

12

the 1.7 mile trip to the Clover Police in order to dispose of the gun. The State successfully rebutted this with the rationalizing story provided to them by Holly McCarter, the irrefutable video evidence of its falsity notwithstanding. This video was in the possession of the State at the time that testimony was elicited and the arguments were made. If the jury had known that Holly McCarter had lied about the vehicle stop at American Auto Sales, they would have been much more likely to conclude that the Defense was correct.

GROUND EIGHT:    Petitioner was denied effective assistance of counsel at the trial state [sic] of his case in violation of Petitioner's rights under the Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution.

Supporting Facts:    At the PCR evidentiary hearing held on October 11, 2012, trial counsel for the Applicant testified that there was a video tape that showed that Holly McCarter was in fact driving the vehicle that arrived at the Clover Police Department. See Transcript of PCR Hearing pg. 88. However, at trial, this point was never raised by trial counsel on cross examination of Holly McCarter. See Trial Transcript pp 543-556. Trial counsel was also deficient in failing to argue this point in closing, relying instead only on the eyewitness testimony of an Officer who testified that a female was driving when the car arrived at the police station. See Trial Transcript p. 1089. Trial counsel failed to even mention the video or object to the State eliciting this testimony. Trial counsel's failure to utilize the irrefutable

13

evidence that Ms. McCarter had lied critically prejudiced the theory of the defense, and constitutes ineffective assistance of counsel in violation of Applicant's Constitutional guarantees. If the jury had been aware beyond the shadow of a doubt that Holly McCarter was lying about the vehicle stop, they would have been much more likely to conclude that the Defense's theory about the stop was correct. Additionally, the jury would know that the State's theory of the case was based on false testimony.

GROUND NINE:          Petitioner was denied effective assistance of counsel at the trial state of his case in violation of Petitioner's rights under the Sixth, Eight, and Fourteenth Amendments of the U.S. Constitution.

Supporting Facts:          Trial counsel failed to correctly ascertain that the "Castle Doctrine" statute did not apply to the Applicant's case. The statute was enacted a few months after Applicant's trial, and the legislation included a savings clause that indisputably states that the statute was intended to be only applied prospectively. The savings clause was not published within the language of the statute itself, but it was readily available on the legislature's website. AT the PCR hearing, trial counsel confirmed that he filed a written motion to quash Applicant's indictments based on the "Castle Doctrine" statute. Trial counsel testified that he could not remember whether he had consulted the savings clause prior to the motion to quash. See PCR hearing transcript p. 65 line 9. Trial counsel did concede that his written motion, which contained his copy

of the law, did not include the savings clause. See PCR hearing transcript p. 65 lines 1-3. Trial counsel's failure to correctly ascertain the applicability of this statute unquestionably affected trial counsel's ability to correctly advise Applicant on his chances for success at trial because the statute, had it been retroactive, would have greatly increased Applicant's chances of being acquitted.

GROUND TEN:            Petitioner was denied effective assistance of counsel at the trial state [sic] of his case in violation of Petitioner's rights under the Sixth, Eight, and Fourteenth Amendments of the U.S. Constitution.

Supporting Facts:      Lee Owens was originally a co-defendant in this case because Mr. Owens also fired a gun during the incident. Trial counsel testified at the PCR hearing that Mr. Owens was introduced to the jury panel as a co-defendant. After the jury was selected, Mr. Owens entered a no contest plea. The trial court pointed out Mr. Owens' absence to the jury and told them that the case was concluded as to Mr. Owens. Trial counsel admitted at the PCR hearing that he did not ask for a new jury. Trial counsel also admitted that he did not request that the trial court give a curative instruction to the jury to ensure that they would not consider Mr. Owens' absence in their consideration of the case.

GROUND ELEVEN:         Petitioner was denied effective assistance of counsel at the trial state [sic] of his case in violation of Petitioner's rights under the Sixth, Eight, and Fourteenth Amendments of the U.S. Constitution due to counsel's failure to

15

challenge the trial court's imposition of restitution in the amount of $31,000 without adequately considering the factors set forth in S.C. Code Sec. 17-25-322(B).

Supporting Facts:    During sentencing, the court imposed a restitution payment of $31,000 to cover funeral and medical expenses. There was no discussion of the statutory ~actors or clarification of the nature of medical expenses and whether a portion of these expenses actually related to maintaining the victim on life support for more than 24 hours so that his organs could be donated.

(Petition) (errors in original).

## STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court  assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is

proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable

18

determination of the facts in light of the State court proceeding.

Thus, a writ may be granted if a state court "identifies the correct principle from [the Supreme] Court's decisions but unreasonably applies that principle of law" to the facts of the case. Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (citing Williams v. Taylor, 529 U.S. 362, 413 (2000)). However, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." Id. "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004). Further, factual findings "made by a State court shall be presumed to be correct," and a Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## **PROCEDURAL BAR**

The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from

19

considering claims not raised in a timely fashion. The two routes of appeal in South

Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the

South Carolina Supreme Court will refuse to consider claims raised in a second appeal

which could have been raised at an earlier time. Further, if a prisoner has failed to file

a direct appeal or a PCR and the deadlines for filing have passed, he is barred from

proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier

default in the state courts, the federal court honors that bar. State procedural rules

promote

> not only the accuracy and efficiency of judicial decisions, but also the
> finality of those decisions, by forcing the defendant to litigate all of his
> claims together, as quickly after trial as the docket will allow, and while
> the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10–11 (1984).

Although the federal courts have the power to consider claims despite a state

procedural bar,

> the exercise of that power ordinarily is inappropriate unless
> the defendant succeeds in showing both "cause" for
> noncompliance with the state rule and "actual prejudice"
> resulting from the alleged constitutional violation.

Smith v. Murray, 477 U.S. 533 (quoting Wainwright v. Sykes, 433 U.S. at 84 (1977)).

See also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas Petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a Petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S.478, 496 (1986).

## ANALYSIS

The South Carolina Court of Appeals summarized the facts surrounding Petitioner's crimes as follows:

> On the night of February 18, 2006, Bolin and several other individuals were guests in the home of Bradley Deal (Deal). Travis Falls (Falls), Holly McCarter (McCarter), Bobby Hovis (Hovis), and two others decided to drive to Deal's home to attack Deal, his brother, and various other people at the home.
>
> Falls, having been released on bond only a few days earlier for charges of assault and battery on Deal, was under a bond provision forbidding any contact with Deal or his home. Despite the bond provision, Falls and the others drove to Deal's home, pulling up on the roadside just past the front of the driveway. Upon Falls' arrival, people began to rush outside of Deal's home, including Bolin. Falls and the others exited the car and proceeded up the driveway. One of the men yelled to start a fight and threw a beer bottle onto the driveway, shattering the bottle. As this was occurring, a fight ensued near the car between McCarter and Lori Moss (Moss), who was also a guest at Deal's home. Falls joined the fight and hit Moss, knocking her to the ground.

As Bolin exited the home, he heard someone yell to get a gun.  Bolin went to his truck parked in the yard in front of Deal's home and retrieved a pistol stored in the glove compartment of the truck.  Bolin heard gunfire near the car and to his side.  Falls and several others ran to their car and got inside.  As they entered the vehicle, Bolin heard more shots being fired near the car.  McCarter got in the driver's seat with Falls directly behind her while Hovis sat in the rear passenger seat next to Falls.

As the car began to pull away, Bolin and another individual who was standing beside Bolin fired several shots at the vehicle.  A bullet of the same caliber as Bolin's pistol shattered the rear window, passed through Falls' wrist and hit Hovis in the head.  The car proceeded away from the scene and headed to the Clover Police Department.  An ambulance was dispatched and Falls and Hovis were taken to the hospital.  Hovis was pronounced dead at the hospital; Falls received treatment and was released.

State v. Bolin, 381 S.C. 557, 559–60, 673 S.E.2d 885, 885–86 (Ct. App. 2009)

(footnote omitted).

## **Ground One**

In Ground One of the habeas petition, Petitioner argues that trial counsel was ineffective for failing to call two witnesses—Eric Brown and Samantha Eason—who were at the crime scene and who saw gunfire coming from the victims' automobile. Respondent submits that the PCR court made reasonable factual findings and reasonably applied Strickland v. Washington, 466 U.S. 668 (1984), in denying this claim, and thus Petitioner is not entitled to habeas relief.

When presented with an application for habeas relief, the first inquiry by the

22

court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); see Williams v. Taylor, 529 U.S. at 398.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland, supra, the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "The proper measure of attorney performance remains simply

reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342,

348 (4th Cir. 1985) (quoting Strickland), reversed on other grounds, 476 U.S. 28

(1986.  In meeting the second prong of the inquiry, a complaining defendant must

show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable
> probability that, but for counsel's unprofessional  errors,
> the result of the proceeding would have been different.  A
> reasonable  probability  is  a  probability  sufficient  to
> undermine confidence in the outcome.

Strickland, 466 U.S. at 694.

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must
> judge the reasonableness of counsel's challenged conduct
> on the facts of the particular case, viewed as of the time of
> counsel's conduct . . . the court must then determine
> whether, in light of all the circumstances, the identified acts
> or omissions were outside the wide range of professionally
> competent assistance.  (Emphasis added.)

Id.; Williams v. Taylor, 529 U.S. 362 (2000)(confirming the Strickland analysis).

The PCR court held the following with respect to this issue, quoted verbatim:

> This Court finds that Applicant failed to establish that
> counsel's failure to call Eric Brown and Samantha Eason as
> defense  witnesses  constituted  ineffective  assistance  of
> counsel.  First, this Court finds that Applicant failed to
> present Eason to testify at the post-conviction relief
> hearing.  Therefore, any claim or prejudice for failing to
> present Ms. Eason as a defense witness is purely
> speculative.  See Dempsey v. State, 363 S.C. 365, 610

24

S.E.2d 812 (2005) (stating any finding of prejudice is purely speculative in a claim counsel was ineffective for failing to present a witness at trial where the applicant fails to present the testimony of the witness at the post-conviction relief hearing); see also Underwood v. State, 309 S.C. 560, 425 S.E.2d 20 (1992) (same); Clark v. State, 315 S.C. 385, 434 S.E.2d 266 (1993) (same). Mere speculation as to what Ms. Eason's testimony might have been is insufficient to satisfy the Applicant's burden of showing prejudice. "In a post-conviction relief action, the Applicant "may not simply posit suppositions and speculation in an attempt to establish that counsel was ineffective." Simpson v. Moore, 367 S.C. 587, 627 S.E.2d 701, FN 2 (2006). This Court refuses to engage in speculation particularly in view of Ms. Eason's widely divergent prior statements. Applicant can only speculate what Ms. Eason might have said when called to testify under oath. Moreover, counsel considered Eason's version of the facts to be even more inconsistent than that of Eric Brown. Eason's wildly inconsistent versions of the facts would cause the jury to question Eason's credibility in a manner that might be negative to Applicant's defense. The claim respecting Ms. Eason is without merit.

Second, this Court finds that trial counsel employed a reasonable trial strategy of eliciting evidence that shots were fired from the victims' car through the testimony of Bradley Deal, law enforcement officer testimony and other evidence rather than using the ever-shifting, recanting, and unreliable witnesses now suggested by Applicant. This Court notes counsel's concern that Eric Brown's version of the facts was not consistent, that his testimony regarding a "second car" would have conflicted with Applicant's theory of the case, and his testimony that Applicant shot the wrong car would have been harmful to the defense. This Court agrees and so finds. Deputy Solicitor Thompson testified that he was not surprised that counsel declined to call either of these witnesses.

25

This Court finds that counsel employed a trial strategy of using evidence other that the testimony of Brown and Eason to corroborate testimony that shots were fired from the victims' automobile.  This Court finds counsel's trial strategy in this respect to be reasonable based upon the facts of the case, counsel's investigation, and counsel's experience in the trial of murder cases.  Eric Brown and Samantha Eason were potentially harmful to Applicant's defense and counsel was able to present the necessary evidence in a manner that was more favorable to Applicant. See Simpson v. Moore, 367 S.C. 587, 603, 627 S.E.2d 701, 709-710 (2006) (stating where counsel articulates a valid reason for employing a particular trial strategy, counsel's conduct will not be determined ineffective assistance of counsel); Dempsey v. State, 363 S.C. 365, 610 S.E.2d 812 (2005) (same).  McLaughlin v. State, 352 S.C. 476, 483-484, 575 S.E.2d 841, 844-845 (2003) (same).  This Court finds that counsel's action respecting these witnesses fell within the range of expected professional norms and was neither deficient nor prejudicial.  Rather, it was a matter of reasonable trial strategy.  Jackson v. State, 329 S.C. 345, 495 S.E.2d 768 (1998).  Applicant's allegation respecting counsel's failure to call Eric Brown and Samantha Eason as defense witnesses is without merit and is denied.

(App. 19–21).

As an initial matter, the undersigned notes that the only argument in Petitioner's Ground One that is properly preserved for habeas corpus review is that trial counsel was ineffective for failing to call Brown as a witness at Petitioner's trial. Though the PCR court ruled on whether trial counsel was ineffective for failing to call Eason as a witness, that issue was not raised to the South Carolina Supreme Court in

Petitioner's PCR appeal.  (Doc #19-3, p. 9).  Thus, the claim regarding trial counsel's failure to call Eason as a witness is procedurally barred.

At the PCR hearing, Eric Brown testified about what he witnessed the night of the shooting.  According to Brown, two cars pulled up in front of the house before a fight ensued between a female who was at the house and a male from one of the cars. (App. 463–64).  Brown testified, "[A]ll of a sudden the cars that were sitting there was gunfire coming out of cars towards the house and that's when Mr. Bolin and Mr. Owens had started returning gunfire."  (App. 463).  Brown testified that the shooter from one of the cars looked like Jeff Buck.  (App. 464).  Brown stated that he told both the State and Petitioner's investigator "[t]he same thing that I told everybody else.  That I saw gunfire coming from a car before anybody started shooting from the house."  (App. 466).  On cross-examination, Brown denied telling a polygraph examiner that he was not sure if he saw gunfire out of the second car or if it was just a reflection. (App. 468).  He admitted that he did not initially tell the police that it was Jeff Buck shooting out of the car.  (App. 469).  Brown also testified that he did not see any flashes coming from the victims' car and that Petitioner had shot at the wrong car. (App. 462–76).

At the PCR evidentiary hearing, trial counsel gave multiple reasons for not calling Brown as a witness, including that Brown's testimony that gunshots came from

a car other than the one Petitioner shot at was not helpful to the defense. (App. 501–02, 546–47). Though trial counsel considered calling Brown and Eason as witnesses at some point, he ultimately made the strategic decision not to call them. (App. 546–49). Trial counsel was concerned about Brown's and Eason's credibility in front of the jury. (App. 558). Rather than call Brown and Eason as defense witnesses to establish that there was a gun in victims' car, trial counsel developed that defense through other witnesses put up by the State—for example, Robert Beverly, who admitted making a statement to police that someone was firing from one of the cars but recanted that statement at trial, and Bradley Deal, who testified that he saw an arm come out of the passenger side window of the victims' car and then saw three muzzle flashes. (App. 503–08, 543–46). Trial counsel testified he thought that testimony was "quite compelling," particularly when combined with other circumstantial evidence that there was a gun in the victims' car. (App. 508–09).

Deputy Solicitor Willy Thompson, who prosecuted Petitioner's case, testified that Brown participated in a polygraph examination before trial, during which his story changed slightly from his previous statement. (App. 579–81). Thompson testified that Brown stated during the polygraph interview that Petitioner shot at the "wrong car." (App. 581). Thompson also testified that Samantha Eason gave two statements. In her first statement, made on the night of the shooting, she said Lee

28

Owens first shot out the back window of the car and then the people in the car returned gunfire, and "Berry had no choice but to fire back." (App. 583). In her second statement, she indicated that the people in the car shot first and that Owens was also acting in self-defense. (App. 585). Thompson also indicated that Eason seemed "a little loopy" when she gave her second statement, and he further indicated "[s]he appeared to have maybe been taking something." (App. 585). Thompson learned that at the time of Eason's first statement (the night of the shooting), she was dating Robert Beverly, but at the time of her second statement, she was dating Owens. (App. 584–85). Ultimately, the State elected not to call either Brown or Eason. Thompson explained,

> [W]hen it came to these two I felt that the cross examination would be better served if the defense called them and then I would be able to attack them much more vigorously on the inconsistencies in the statements and the problems I had getting in contact with them. And their closeness to each of the defendants.

(App. 582). Thompson also testified that he was "not shocked" that trial counsel did not call Brown or Eason, stating "I think it was a smart idea not to call [them]." (App. 600–01).

The PCR court's findings indicate that the court found credible trial counsel's testimony regarding his decision not to call Brown as a witness. The PCR court particularly "note[d] counsel's concern that Eric Brown's verison of the facts was not

29

consistent, that his testimony regarding a 'second car' would have conflicted with Applicant's theory of the case, and his testimony that Applicant shot the wrong car would have been harmful to the defense.  This Court agrees and so finds."  (App. 20–21).  The PCR court's factual determination regarding credibility is entitled to deference in this action.  <u>Cagle v. Branker</u>, 520 F.3d 320, 324 (4th Cir. 2008), (citing 28 U.S.C. § 2254(e)(1) (for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear)); <u>see also</u> <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.").  Additionally, the PCR court found that trial counsel's strategic decision[3] to use evidence other than the testimony of Brown and Eason to be reasonable considering Brown and Eason "were potentially harmful to Applicant's defense and counsel was able to present the necessary evidence in a manner that was more favorable to Applicant."  (App. 21). A presumption of correctness attaches to state court factual findings. 28 U.S.C. §2244(e)(1). <u>Evans v. Smith</u>, 220 F.3d 306 (4th Cir. 2000). The state PCR court's findings of fact are not only entitled to the presumption of correctness, 28 U.S.C. § 2254(e)(1), but also are

---

[3] Courts are instructed not to second guess an attorney's trial strategy and tactics. <u>Goodson v. United States</u>, 564 F.2d 1071, 1072 (4th Cir. 1977); <u>Stamper v. Muncie</u>, 944 F.2d 170 (4th Cir. 1991).

supported by the record. The PCR court concluded that trial counsel's action with respect to these witnesses was neither deficient nor prejudicial. The PCR court's findings were not contrary to, nor did they involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. The findings were also not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d)(1) & (2).

In his reply to Respondent's return, Petitioner argues that trial counsel was ineffective in failing to call Brown, asserting "[i]t is simply not effective representation to fail to call a witness who could advance a client's defense because the attorney did not think the defense would actually work." (Reply 9). But Petitioner's argument fails to afford the proper deference to the conclusion by the PCR court and by trial counsel that Brown's testimony did not advance the defense's theory and could have been potentially harmful to the defense's case. See Bunch v. Thompson, 949 F.2d 1354, 1363 (4th Cir. 1991) ("[W]e must regard counsel's choices with an eye for 'reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" (quoting Strickland, 466 U.S. at 691)); cf. Byram v. Ozmint, 339 F.3d 203, 209–10 (4th Cir. 2003) (finding no ineffective assistance where counsel conducted adequate investigation and made strategic decision not to

present evidence that could have been viewed favorably or unfavorably by the jury).

The State court's finding of no error and no prejudice is not contrary to or involves an unreasonable application of clearly established federal law.   Thus, it is recommended that the Respondent's motion for summary judgment be granted as to Ground One.


**Ground Two**

In his Ground Two, Petitioner claims that trial counsel was ineffective for failing to obtain video surveillance from American Auto Sales, a location where the victims' car briefly stopped between the crime scene and the police station. Respondent contends that Petitioner is not entitled to habeas relief on this ground as the PCR court made reasonable factual findings and reasonably applied federal precedent in denying and dismissing the same.

The PCR court found as follows:

The Court finds that Applicant failed to establish that counsel's failure to obtain surveillance camera footage of the victims' alleged stop at American Auto Sales constituted ineffective assistance of counsel. Specifically, this Court finds that Applicant failed to establish the requisite prejudice - that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. 668 (1984).  Other than by pure speculation, Applicant failed to establish that the surveillance equipment was in working condition,

that it produced a video or other depiction that could have been obtained by counsel if requested earlier, or that the video or other depiction was favorable to Applicant's defense. The investigating law enforcement officers were never able to acquire a video or other depiction of the alleged stop and Deputy Solicitor Thompson testified that the view range of the surveillance cameras would likely have not included the area where the victims pulled over. The owner and manager of American Auto Sales testified that the security camera footage is automatically recycled or wiped clean every twenty-eight (28) to thirty (30) days and therefore any footage that might have existed would not have been available. It should be noted that counsel expressed doubt that the victims stopped at American Auto. Moreover, counsel developed a trial strategy in which he used the possibility that the victims disposed of a gun at American Auto to his advantage at trial. Had counsel obtained the video, it might have precluded that favorable use at trial.

The Applicant failed to establish there is a reasonable probability the result of the trial would have been different had counsel been able to obtain and present the surveillance footage from American Auto at trial. Instead, the Applicant engages in pure speculation. See Porter v. State, 368 S.C. 378, 629 S.E.2d 353 (2006) (stating applicant failed to meet his burden of proof when he failed to show that further investigation would have led to a different result). Counsel was able to use other evidence and inferences to suggest the victims disposed of a gun at that location. The allegation is without merit and is denied.

(App. 25–27).

The PCR court focused on the prejudice prong of Strickland in denying this claim and specifically refused to speculate either that the video could have been obtained by trial counsel or that it would have been helpful to Petitioner's case had it been available. The factual findings that the PCR court relied upon in denying this claim are supported by the record and are entitled to deference in this action. See

33

Cagle, supra.  For example, Deputy Solicitor Thompson testified that he directed police officers to obtain the video surveillance from American Auto Sales, but the officers were not successful.  (App. 590).  Thompson also expressed skepticism that any video surveillance would have captured where the victims would have stopped. (App. 602–03).  Both Roger Nivens, the owner of American Auto Sales, and Rodney Nivens, the manager of American Auto Sales, testified that the videos recycled after approximately thirty days.  (App. 459, 568).  The PCR court's factual conclusions were not unreasonable based on the evidence presented at the PCR evidentiary hearing.

Moreover, the PCR court did not misapply federal law in denying this ineffective assistance of counsel claim where the court found Petitioner failed to make a sufficient showing under the prejudice prong of Strickland. As held in Strickland, 466 U.S. at 697("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed.").  Though the PCR court cited to state case law in explaining that Petitioner failed to show prejudice where he could only speculate that video surveillance was available and would have been favorable, there is support in federal case law for such a conclusion.

34

See id. at 283–84 (finding where a petitioner could only speculate as to what a witness would have testified to had he been called at trial, the federal habeas court could not disagree with the state court's finding that there was no prejudice even assuming counsel was deficient in failing to present that witness's testimony).  Furthermore, as the PCR court pointed out, trial counsel's failure to obtain the video potentially helped Petitioner's case because trial counsel was able to argue that the purpose of the victims' stop at American Auto Sales was to dispose of a gun, and had the video surveillance been obtained and shown otherwise, that argument would have been unavailable to Petitioner.  Accordingly, it is recommended that Respondent's motion for summary judgment be granted as to Ground Two.

**Ground Three**

In Ground Three of the habeas petition, Petitioner argues trial counsel was deficient in his efforts to get Petitioner to accept the State's offer to let Petitioner plead to fifteen years for manslaughter.  Petitioner additionally argues that trial counsel was ineffective for failing to get the plea offer reinstated after the trial court's ruling that the "Castle Doctrine" did not apply to Petitioner's case.  Respondent contends that Petitioner is not entitled to habeas relief on this ground because the PCR court properly denied and dismissed these same claims.  In his reply, Petitioner asserts that

trial counsel failed to adequately advise Petitioner to take the plea offer by leading Petitioner to believe that he could prevail on a particular defense on appeal and by leading Petitioner to believe that fifteen years was a "high" offer.  To the extent Petitioner's arguments in his reply brief exceed those raised in his petition for writ of certiorari in his PCR appeal, Respondent has asserted a procedural bar.

The PCR court made the following findings regarding trial counsel's effectiveness in handling the State's plea offer:

> This Court finds that Applicant failed to establish that counsel provided ineffective assistance in connection with Applicant's rejection of the guilty plea offer or in failing to revisit the matter with the prosecutor later during trial.  Counsel conferred with Applicant extensively about his options and the possible consequences of accepting or rejecting the offer extended by the State on the second morning of trial.  Counsel also extensively conferred with Applicant's family member about the offer and counsel's recommendation and made arrangements for them to meet with Applicant prior to Applicant's decision to reject the plea offer.  Deputy Solicitor Willy Thompson confirmed that counsel looked "dejected" when he returned to the courtroom after failing to convince Applicant to use the offer to his advantage.  The Court is satisfied that counsel did everything he could to convince Applicant to accept the plea offer and finds that Applicant freely, knowingly and voluntarily rejected the plea offer.  This Court also finds that, once the plea offer was rejected, it was no longer available to Applicant and any efforts by counsel to revisit the offer later during trial would have been rejected by the prosecutor.
>
> Applicant's complaints respecting counsel and the guilty plea offer are without merit and are denied.

(App. 29).

The PCR court's factual findings are supported by the record and are entitled to deference in this action. See Cagle, supra. Trial counsel testified that the state offered Petitioner a negotiated plea of fifteen years to voluntary manslaughter, an offer he believed to have been extended shortly after Petitioner's co-defendant pleaded *nolo contendere*. (App. 496–97). Trial counsel testified that he advised Petitioner to take the plea offer, explaining

> Judge Hayes has a good way of kind of letting you know where he is and with his comments to [Petitioner's co-defendant] there was our clue as to where he was. And I talked with Berry . . . . Just the two of us. And I told him that I knew it was a long time, 15 years, because I was dealing with a young man that was 19 that had no prior record and never been to jail. And we are talking about a span of time that is almost equal to the amount of time he has lived on this earth. So in his mind that is a long, long time. Okay. And so I told him, I said, I know that this is a long time, but I recommend you do it and here is why. I said because even though it is a violent offense and you will have—you are going to have to do 85 percent of the sentence. I said, you are 19 years old. Which is going to allow you when you get out, to be able to marry, to have children, to have a job. And I told him, I said, I do not believe that this jury will convict you of murder. But it is very possible that they could convict you of voluntary manslaughter. And if they do convict you of voluntary manslaughter I want you to know Judge Hayes will give you 30 years. And I told him that. And I told his family that. Because I then arranged for him to be able to go back in the law library with his family alone . . . .

(App. 498). According to trial counsel, after Petitioner met with his family, they decided to go forward with the trial and to decline the plea offer against trial counsel's recommendation. (App. 540).

The PCR court rejected Petitioner's claims that trial counsel was deficient in handling the plea offer, finding that trial counsel "did everything he could to convince Applicant to accept the plea offer [but] that Applicant freely, knowingly and voluntarily rejected the plea offer." (App. 29). Petitioner is correct that he was entitled to effective assistance of counsel during plea negotiations, Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012), but the PCR court found that trial counsel provided such representation to Petitioner by recommending that he plead guilty and by conferring with him about the possible consequences. The PCR court did not misapply federal precedent in so finding. The PCR court's findings were not contrary to, nor did they involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. The findings were also not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d)(1) & (2).

As to the arguments raised in Petitioner's reply that trial counsel was ineffective for leading Petitioner to believe that he could prevail on a particular defense on appeal and that fifteen years was a "high" offer, those arguments were not specifically raised to and ruled upon by the PCR court, (see Doc. # 19-4, pp. 21–22), and Respondent has asserted a procedural bar to such arguments, (see Doc. # 19, p. 64). Because the argument raised in the reply to the habeas petition is different from the claim raised

38

at PCR, it is barred from review in federal habeas corpus. <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991). Petitioner has not demonstrated cause and prejudice to overcome his procedural default.

For the above reasons, it is recommended that Respondent's motion for summary judgment be granted as to Ground Three.

## **Grounds Four and Five**

In Petitioner's Grounds Four and Five, he asserts two different alleged errors by the PCR court. In his Ground Four, Petitioner claims the PCR court erred in denying his request to conduct an in camera review of materials that had not been previously produced by the State, which the State claimed were work product and privileged. In his Ground Five, Petitioner claims the PCR court erred in denying Petitioner leave to amend his PCR application after the PCR evidentiary hearing to conform his pleadings to the evidence adduced at the hearing. Specifically, he claims the evidence showed that the State had elicited false testimony from a witness at trial and that trial counsel was ineffective for failing to use police station video that proved the same witness had lied.

Respondent argues that neither of these grounds is cognizable in this action as both concern the state PCR process and do not raise claims concerning federal habeas corpus relief. This court agrees. Alleged defects in state PCR proceedings are not

cognizable in a federal habeas action.  Wright v. Angelone, 151 F.3d 151 (4th Cir. 1998); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir 1998) (holding errors and irregularities in connection with state PCR proceedings are not cognizable on federal habeas review).  Thus, it is recommended that summary judgment be granted for Respondent with regard to Grounds Four and Five.

**Grounds Six and Ten**

In Grounds Six and Ten,[4] Petitioner raises the same claim—that trial counsel was ineffective for failing to request either a new jury or a curative instruction to the jury following Petitioner's co-defendant's guilty plea which occurred after jury selection.  Respondent asserts that this claim is procedurally barred as it was not ruled upon by the PCR court and was first raised to the PCR court in a second amended application submitted after the PCR evidentiary hearing.

A jury was selected on the first day of Petitioner's trial.  At the time, he was going to be tried jointly with his co-defendant, Ronald Lee Owens.  (App. 624–27). However, on the second day of trial before opening statements, Owens pleaded nolo contendere to some of his charges and others were dismissed by the State.  (App. 793–814).  When the trial judge brought the jury into the courtroom to hear opening

---

[4] Respondent has mistakenly referred to Petitioner's Ground Ten as Ground Nine in addressing this allegation.

statements, the judge noted that they had been working on legal matters since the judge had last dismissed the jury. He also commented, "[Y]ou will notice if you look to my right, that Mr. Owens and his counsel are not present anymore. The case is concluded as to them. We're simply going forward as to Mr. Bolin . . . ." (App. 818). At the PCR evidentiary hearing, PCR counsel asked trial counsel whether he had asked the judge for a new jury or for a curative instruction directing the jury not to take into consideration the fact that Mr. Owens was no longer present. (App. 517–18). Trial counsel responded that he did not. (App. 517–18). Counsel for the State objected to PCR counsel raising a ground of ineffective assistance of counsel that had not been raised in the PCR application. (App. 517–18). The PCR judge noted the State's objection but allowed PCR counsel to question trial counsel on the issue. (App. 518).

Over three months after the PCR evidentiary hearing, PCR counsel submitted a motion to file a second amended PCR application. (App. 322–32). In the second amended application, PCR counsel raised the following claim:

10(H) <u>GROUND H</u>

Petitioner was denied effective assistance of counsel at the trial state of his case in violation of Petitioner's rights under the Sixth, Eight, and Fourteenth Amendments of the U.S. Constitution.

11(H) <u>FACTS IN SUPPORT OF GROUND H</u>

> Lee Owens was originally a co-defendant in this case because Mr.
> Owens also fired a gun during the incident. Trial counsel testified at the
> PCR hearing that Mr. Owens was introduced to the jury panel as a co-
> defendant. After the jury was selected, Mr. Owens entered a no contest
> plea. The trial court pointed out Mr. Owens' absence to the jury and told
> them that the case was concluded as to Mr. Owens. Trial counsel
> admitted at the PCR hearing that he did not ask for a new jury. Trial
> counsel also admitted that he did not request that the trial court give a
> curative instruction to the jury to ensure that they would not consider Mr.
> Owens' absence in their consideration of the case.

(App. 329–30). The State objected to the motion to amend the application. (App.

333–35). The PCR court ultimately denied Petitioner's motion to file a second

amended application, finding that the proposed amendments would be prejudicial to

the State. (App. 40–44, 345–46). The order denying post-conviction relief did not

include any analysis of the ineffective assistance of counsel claim now articulated in

Petitioner's Grounds Six and Ten of the instant petition. (See App. 8–45).

The court agrees with Respondent that since the claim raised in Petitioner's

Grounds Six and Ten was excluded during PCR proceedings based on applicable state

law, that same claim is procedurally barred in this habeas action. Coleman v.

Thompson, 501 U.S. 722, 730 ("The [independent and adequate state ground] doctrine

applies to bar federal habeas when a state court declined to address a prisoner's

federal claims because the prisoner had failed to meet a state procedural requirement.

In these cases, the state judgment rests on independent and adequate state procedural

grounds."). Petitioner has not shown cause or prejudice to overcome the default.[5] Thus, it is recommended that Respondent's motion for summary judgment be granted as to Grounds Six and Ten.

**Grounds Seven and Eight**

In Petitioner's Ground Seven, he asserts that he was denied his right to a fair trial because the State knowingly presented false testimony and failed to correct it. In his Ground Eight, Petitioner asserts that trial counsel was ineffective for failing to present evidence that contradicted the alleged false testimony.  Because these grounds concern the same testimony, this court considers them together.   Specifically, Petitioner claims that the State elicited testimony from Holly McCarter that she initially drove the victims' car away from the crime scene but stopped at the American Auto Sales to switch seats with Michael Hubbard, who then drove the car to the Clover Police Station.  Petitioner asserts that there is "irrefutable video evidence" that McCarter was, in fact, driving the car when it arrived at the police station. Respondent asserts that these claims are procedurally barred because they were not raised to and ruled upon by the PCR court.

At Petitioner's trial the State presented the testimony of McCarter, Hubbard,

---

[5] Petitioner did not address this claim or the asserted procedural bar in his reply. (Doc. #29).

and Travis Falls.  All three of them fled in the victims' car after the shooting, and they each testified that McCarter initially drove the car away from the crime scene but that she became panicked when she realized that Falls and Bobby Hovis had been shot. (App. 1080–83, 1141–46, 1177–82).  The same witnesses testified that McCarter stopped briefly at American Auto Sales, and she and Hubbard switched seats, and he drove to the Clover Police Station.  (App. 1083–84, 1145–47, 1182–83).  However, the State also presented the testimony of Clover Police Sergeant Michael Trabue, who testified that when the victims' car arrived at the police station there was only one female in the car, and she was driving.  (App. 862–63, 866).

At the PCR evidentiary hearing, while explaining what evidence there was to support his theory that there was a gun in victims' car, trial counsel testified,

> Another thing that we got in regards to the existence of a gun is that Holly McCarter purger [sic] herself.  She lied on the stand.  And the State put her up.  And the State knew what she was going to testify to. I knew what she was going to testify to.  And that's why it struck me greatly when we saw the video of the car pulling in behind the police station.  Because Holly McCarter said and she testified, that they had stopped at American Auto because they wanted to change drivers because she was so upset.  And she gave that in a statement at the beginning of the investigation.  We got it.  And the State stayed with that testimony.  That they had stopped there so that they could trade drivers. And that's what she testified at trial.  Under oath.
>
> Now, she was the only female in the car.  Everybody else was male and she testified they stopped at the American Auto Sales and then they went directly to the Clover Police Department.

Well, the next time that we see the car when the car pulls up behind the Clover Police Department who is driving the car, Holly. They didn't trade drivers. So, they must have stopped for some other reason.

(App. 511). When Deputy Solicitor Thompson testified, he discussed his understanding that the victims' car stopped at American Auto Sales "just on the edge of the parking lot[,]" but he also indicated, "[o]f course as Mr. Greeley said, there was video from Clover that showed them pull in with the girl driving." (App. 591).

As previously discussed, after the PCR evidentiary hearing, PCR counsel requested to amend the PCR application to conform to the evidence. Petitioner asked to amend the application to include the following claims:

10(E) GROUND E

Petitioner was denied his right to a fair trial, a right guaranteed by the Fourteenth Amendment to the United States Constitution as well as the South Carolina Constitution because the state elicited false testimony, failed to correct it, and argued it to the jury.

11(E) FACTS IN SUPPORT OF GROUND E

The State elicited testimony from Holly McCarter that she was too hysterical to drive her vehicle to the police station upon learning that Bobby Hovis had been shot. The testimony of Ms. McCarter was that she was not driving the vehicle when it arrived at the Clover Police Department. This testimony is refuted by a video showing that she was in fact driving the car when it arrived at the station. Not only did the State elicit this testimony and fail to correct it, the State argued this point to the jury.

This point is critical because the defense argued that there had been a

45

gun in the victims' car, and that they had stopped at American Auto Sales on the 1.7 mile trip to the Clover Police in order to dispose of the gun. The State successfully rebutted this with the rationalizing story provided to them by Holly McCarter, the irrefutable video evidence of its falsity notwithstanding. This video was in the possession of the State at the time that the testimony was elicited and the arguments were made. If the jury had known that Holly McCarter had lied about the vehicle stop at American Auto Sales, they would have been much more likely to conclude that the Defense was correct.

## 10(F) GROUND F

Petitioner was denied effective assistance of counsel at the trial state [sic] of his case in violation of Petitioner's rights under the Sixth, Eight [sic], and Fourteenth Amendments of the U.S. Constitution.

## 11(F) FACTS IN SUPPORT OF GROUND F

At the PCR evidentiary hearing held on October 11, 2012, trial counsel for the Applicant testified that there was a video tape that showed that Holly McCarter was in fact driving the vehicle that arrived at the Clover Police Department. See Transcript of PCR Hearing pg. 88. However, at trial, this point was never raised by trial counsel on cross examination of Holly McCarter. See Trial Transcript pp 543-556. Trial counsel was also deficient in failing to argue this point in closing, relying instead only on the eyewitness testimony of an Officer who testified that a female was driving when the car arrived at the police station. See Trial Transcript p. 1089. Trial counsel failed to even mention the video or object to the State eliciting this testimony.

Trial counsel's failure to utilize this irrefutable evidence that Ms. McCarter had lied critically prejudiced the theory of the defense, and constitutes ineffective assistance of counsel in violation of Applicant's Constitutional guarantees. If the jury had been aware beyond the shadow of a doubt that Holly McCarter was lying about the vehicle stop, they would have been much more likely to conclude that the Defense's theory about the stop was correct. Additionally, the jury would know that the State's theory of the case was based on false testimony.

(App. 327–29).  The State objected, and the PCR court denied the motion to amend.

(App. ); see also pp. 40–41, supra.  The PCR court specifically noted,

> Applicant's Motion to File a Second Amended Application after the evidentiary hearing appears to pertain, in part, to a purported surveillance video alluded to, and allegedly presented for the first time by Applicant's trial counsel in his testimony.  Certainly if Applicant's sole source for the purported existence of this video is his trial counsel's testimony, Applicant cannot contend its existence was unknown or is the source of any prosecutorial misconduct.

(App. 42).  PCR counsel subsequently sent a letter to the PCR court indicating that he first learned of the existence of a video showing McCarter driving up to the police station during trial counsel's testimony at the PCR evidentiary hearing.  (App. 338).  No such video had been mentioned by either side at Petitioner's trial.  (App. 338).  When PCR counsel went through all of the materials he had obtained in representing Petitioner, he was unable to find any video that showed what trial counsel described.  (App. 338).  Nevertheless, based upon trial counsel's "unwavering testimony" and Thompson's failure to disavow the video, PCR counsel indicated, "I can come to no conclusion except that Mr. Greeley did see this video at some point."  (App. 338).

Respondent argues that both of these grounds are procedurally barred as they were not properly raised during the PCR proceedings in state court.  This court agrees.  Petitioner has failed to assert either cause or prejudice for the procedural bar,[6] and

---

[6] Petitioner did not address this claim or the asserted procedural bar in his reply.  (Doc. # 29).

none is readily apparent from the record.[7]  Recognizing the state court's finding of a bar as to both of these grounds, it is recommended that Respondent's motion for summary judgment be granted as to Petitioner's Grounds Seven and Eight.

## Ground Nine

Petitioner asserts in his Ground Nine that trial counsel provided ineffective representation by failing to correctly ascertain that the "Castle Doctrine" statute did not apply to Petitioner's case.  Petitioner reasons that trial counsel's failure to correctly ascertain the applicability of the statute hindered trial counsel's ability to correctly advise Petitioner on his chances at trial.  Respondent contends that this ground is duplicative of Petitioner's Ground Three and should be denied for the same reasons.  This court agrees.

Contrary to Petitioner's claim that trial counsel's failure affected his ability to

---

[7] The state court record does not establish that a police station video showing McCarter driving the victims' car exists.  Despite trial counsel's and Thompson's testimony at the PCR evidentiary hearing, no video was ever presented to the PCR court, and rather than accepting the testimony of counsel, the PCR court expressed clear skepticism about the existence of such a video when it denied Petitioner's motion to amend.  PCR counsel also admitted that he did not possess a video showing what trial counsel described.

Along with the return, Respondent has submitted an affidavit by Thompson indicating that none of the surveillance video from the Clover Police Station captured who was driving victims' car when it arrived at the station.  (Doc. # 19-7).  Thompson affirms that he "mistakenly based the portion of [his] testimony regarding the female driving the victim's vehicle into the police parking lot upon Mr. Greeley's testimony from earlier that day."  (Doc. #19-7, p. 3).  Respondent has also obtained a copy of the surveillance video and has offered to provide it to the court.  That will not be necessary at this time.  The undersigned has not relied upon this evidence in determining that a procedural bar exists and in recommending that Respondent's motion for summary judgment be granted.

advise Petitioner on his chances of success, the PCR court found that trial counsel advised Petitioner to plead guilty and accept the State's plea offer based on his assessment of Petitioner's case. That finding was reasonable. See supra, pp. 34–37. The PCR court further found that Petitioner's claims regarding trial counsel and the guilty plea offer to be without merit, a determination that is supported by the record. The undersigned incorporates by reference the earlier discussion of Ground Three as it pertains to the instant ground. Accordingly, it is recommended that Respondent's motion for summary judgment be granted with respect to Petitioner's Ground Nine.

## Ground Eleven

Finally, in Petitioner's Ground Eleven, he contends that trial counsel provided ineffective assistance of counsel for failing to challenge the trial court's imposition of restitution in the amount of $31,000 without adequately considering the factors set forth in S.C. Code Ann. § 17-25-322(B). Respondent argues that this ground is procedurally barred, noting that it was raised in the initial PCR application but abandoned in the amended application and that it was not addressed in the PCR order.

In his initial PCR application, Petitioner asserted that trial counsel was ineffective for failing to challenge the imposed restitution and that there was no discussion of the statutory factors or clarification of the nature of the expenses. (App. 60). Petitioner further questioned "whether a portion of these expenses actually

49

related to maintaining the victim on life support for more than 24 hours so that his organs could be donated." (App. 60). That same claim was excluded from the first amended application filed by PCR counsel. (App. 296–300). It was not raised at the PCR evidentiary hearing, nor was it addressed in the PCR court's order of dismissal, and PCR counsel did not file a Rule 59 motion raising this issue. Thus, it is procedurally barred from consideration in this habeas action. See Coleman, supra. To the extent Petitioner claims that Martinez v. Ryan, 132 S. Ct. 1309 (2012) allows him to overcome his procedural default as to his Ground Eleven, the claim fails. In Martinez, the Supreme Court established a "limited qualification" to the rule in Coleman v. Thompson, 501 U.S. 722, that any errors of PCR counsel cannot serve as a basis for cause to excuse a petitioner's procedural default of a claim of ineffectiveness of trial counsel. Martinez, 132 S. Ct. at 1319. The Martinez Court held that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id. at 1315. In describing its holding in Martinez, the Supreme Court has stated that:

> We . . . read Coleman as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial

50

> proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceedings."

Trevino v. Thaler, 133 S. Ct. 1911 (2013) (citing Martinez, 132 S. Ct. at 1318–19); see also Sexton v. Cozner, 679 F.3d 1150, 1159 (9th Cir. 2012) (summarizing the Martinez test to require the following: "a reviewing court must determine whether the petitioner's attorney in the first collateral proceeding was ineffective under Strickland, whether the petitioner's claim of ineffective assistance of trial counsel is substantial, and whether there is prejudice").

To establish cause under Martinez, Petitioner must demonstrate (1) that his PCR counsel was ineffective under Strickland and (2) that "the underlying ineffective-assistance-of-counsel claim is a substantial one." Martinez, 132 S. Ct. at 1318. Therefore, Petitioner must show that PCR counsel's failure to raise this issue at PCR or to file a Rule 59 motion was "objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter." Sexton, 679 F.3d at 1157; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective assistance-of-counsel claims"); Strickland v. Washington, 466 U.S. at 687 (stating to demonstrate ineffective assistance of counsel, a petitioner must show that (1)

51

counsel's errors were so serious that her performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution and (2) petitioner was prejudiced as a result).

Petitioner has not shown that his PCR counsel was ineffective under Strickland or that the underlying ineffective assistance of trial counsel claim is substantially meritorious to overcome the default. First, the record supports the trial court's imposition of $31,000 restitution—the State informed the trial judge that Bobby Hovis's family spent $4,000 for funeral expenses and $27,000 for medical expenses. (App. 1796). Though Petitioner speculates that some of the expenditures related to maintaining the victim on life support so that his organs could be donated, there is no evidence to support that speculation. Also, as to the particular statute that sets forth the factors that Petitioner believes trial counsel should have asked the judge to consider, S.C. Code Ann. § 17-25-322(B), that statute merely states that

> [i]n determining the manner, method, or amount of restitution to be ordered, the court may take into consideration the following:
>
> (1)    the financial resources of the defendant and the victim and the burden that the manner or method of restitution will impose upon the victim or the defendant;
>
> (2)    the ability of the defendant to pay restitution on an installment basis or on other conditions to be fixed by the court;
>
> (3)    the anticipated rehabilitative effected on the defendant

regarding the manner of restitution or the method of payment;

(4)     any burden or hardship upon the victim as a direct or indirect result of the defendant's criminal acts;

(5)     the mental, physical, and financial well-being of the victim.

Based on the language of the statute, those factors are available for the court's consideration but not required. Furthermore, it is unclear how the consideration of any of the above factors would have lessened the restitution amount Petitioner was ordered to pay. Accordingly, Petitioner has failed to show that his underlying ineffective assistance of counsel claim was substantial, and the procedural default stands. It is thus recommended that Respondent's motion for summary judgment be granted as to Ground Eleven.

## **CONCLUSION**

As set out above, a review of the record indicates that the petition should be dismissed. Therefore, it is RECOMMENDED that Respondent's motion for summary judgment (Doc. #20) be granted and the petition be dismissed without an evidentiary hearing.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

April 21, 2016
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice**.