IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| BERRY SCOTT BOLIN, #290062,   )<br>                                                            )<br>                         Petitioner,   )<br>                                                            )<br>v.                                                       )<br>                                                            )<br>WARDEN, *Lee Correctional Institution*,   )<br>                                                            )<br>                         Respondent.   )<br>_____)  | No. 4:15-cv-01523-DCN<br><br>**ORDER** |

This matter is before the court on Magistrate Judge Thomas E. Rogers, III's Report and Recommendation ("R&R") that this court grant respondent Warden of Lee Correctional Institution's ("Respondent") motion for summary judgment and deny petitioner Berry Scott Bolin's ("Petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the court adopts the R&R, denies the petition, and grants respondent's motion for summary judgment. Additionally, the court adopts those portions of the R&R which are not inconsistent with this Order.

## I.  BACKGROUND[1]

Petitioner was convicted of voluntary manslaughter, assault and battery of a high and aggravated nature, and discharging a weapon into an occupied vehicle after a jury trial from August 28, 2006 to September 6, 2006. He was sentenced to thirty years confinement for the voluntary manslaughter conviction and to ten years confinement for

---

[1]     Because petitioner does not have any objections to the procedural background as fully set forth in the magistrate judge's R&R, the court will dispense with a lengthy recitation thereof and will direct the parties to pages 2–8 of the R&R. See ECF No. 35; ECF No. 31 at 2-8. The court will only provide an overview of the procedural background of this case.

1

each of the remaining charges of assault of a high and aggravated nature and discharging a firearm, to be served concurrently. He was also ordered to pay $31,000 in restitution. Petitioner filed a timely appeal, and the South Carolina Court of Appeals affirmed his conviction and sentence on February 5, 2009. On February 1st, 2010, petitioner filed an application for post-conviction relief ("PCR") in state circuit court, originally setting forth two specific claims of ineffective assistance of counsel and later amending to add four additional claims of ineffective assistance for a total of six claims of ineffective assistance of counsel. The PCR judge denied the requested relief on January 7, 2014. Petitioner's Rule 59(e) motion to alter or amend the judgment of the PCR court was denied on February 6, 2014. The South Carolina Supreme Court denied petitioner's writ of certiorari on March 8, 2015, and issued its remittur on April 3, 2015.

Petitioner filed the present writ of habeas corpus in this court on April 8, 2015, raising the following eleven grounds for relief:

> **Ground One:** Petitioner's right to effective assistance of counsel at the trial stage, as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, was violated in the trial court when Trial counsel failed to call several witnesses who were present at the scene who would have testified that they saw gunfire coming from the alleged victims' automobile. Counsel also allowed the State the last closing argument.
>
> **Ground Two:** Petitioner's right to effective assistance of counsel at the trial stage, as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, was violated in the trial court when trial Counsel failed to obtain surveillance videotape from the location where the alleged victims stopped their vehicle on their way to the police station.
>
> **Ground Three:** Petitioner's right to effective assistance of counsel at the trial stage, as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, was violated in the trial court when trial Counsel was deficient in adequately advising Petitioner to accept the guilty plea offer of 15 years for manslaughter. Trial Counsel was also deficient in getting the plea offer

reinstated after the trial judge ruled that the "Castle Doctrine" statute was inapplicable.

**Ground Four:** The PCR court erred when it denied petitioner's request to conduct an in-camera review of materials withheld by the state in violation of the Sixth and Fourteenth Amendments under the work-product privilege.

**Ground Five:** The PCR court erred when it denied petitioner's request to amend his post-conviction relief application to conform the pleadings to the evidence presented in the evidentiary hearing, including that the state elicited false testimony from a witness and that trial counsel was ineffective in failing to mention police station video proving that a witness lied.

**Ground Six:** Trial counsel was deficient in failing to request a new jury or a curative jury instruction after the petitioner's co-defendant pled guilty after being introduced to the jury.

**Ground Seven:** Petitioner right to a fair trial, as guaranteed by the Fourteenth Amendment to the United States Constitution and the South Carolina constitution, was violated when the state elicited false testimony from Holly McCarter, failed to correct it, and argued it to the jury.

**Ground Eight:** Petitioner's right to effective assistance of counsel at the trial stage, as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, was violated when trial counsel failed to raise that Holly McCarter was not driving the vehicle that arrived at the Clover Police Department during trial, thus undermining the defense argument.

**Ground Nine:** Petitioner's right to effective assistance of counsel at the trial stage, as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, was violated when trial counsel failed to ascertain that the "Castle Doctrine" statute was inapplicable in this case.

**Ground Ten:** Petitioner's right to effective assistance of counsel at the trial stage, as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, was violated when trial counsel failed to ask for a new jury or a curative instruction after the petitioner's co–defendant pled guilty after being introduced to the jury.

**Ground Eleven:** Petitioner's right to effective assistance of counsel at the trial stage, as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, was violated when trial counsel failed to challenge the trial court's imposition of restitution without addressing relevant statutory factors.

See ECF No. 1, Ex. 1 at 1-13.

Respondent filed a motion for summary judgment on September 4, 2015. The court granted petitioner's request for an extension of time to file a response in opposition to the summary judgment motion on October 13, 2015. Petitioner filed a response in opposition to the summary judgment motion on November 13, 2015. The magistrate judge issued an R&R on April 21, 2016. The court granted petitioner's request for an extension of time to file objections to the R&R on May 3, 2016. On May 29, 2016, petitioner filed objections to the R&R and respondent filed a reply on June 16, 2016. The matter has been fully briefed and is now ripe for the court's review.

## II.   STANDARDS OF REVIEW

### A.   R&R

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made, and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). The magistrate judge's recommendation does not carry presumptive weight, and it is the responsibility of this court to make a final determination. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). A party's failure to object may be treated as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 150 (1985).

### B.   AEDPA Section 2254

This court has jurisdiction to hear a petition for a writ of habeas corpus made by a person in custody pursuant to a state court proceeding under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214,

which provides relief if the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  To obtain a writ of habeas corpus from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington v. Richter, 131 S.Ct. 770, 786–87 (2011).

Federal habeas corpus relief may not be granted on any claim that was adjudicated on the merits in the state court unless the state court determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254 (d)(1), (2).  Under 28 U.S.C. § 2254 (d)(1), a state court's decision is contrary to clearly established federal law if it arrives at a conclusion "opposite to that reached by [the Supreme] Court on a question of law or if the state court decides differently than th[e] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 413 (2000).  A state court's decision involves an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(2) when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to facts of [a particular] case."  Id.  Under AEDPA , a federal court gives deference to a state court's resolution of a state prisoner's habeas claims.  See Bell v. Cone, 543 U.S. 447, 455 (2005).

5

### C.     Summary Judgment

Summary judgment shall be granted if the movant shows that there is no genuine dispute as to any issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Where there is a "genuine" dispute about a material fact and a reasonable jury could return a verdict for the nonmoving party, summary judgment is not appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). At this stage, the court must view the evidence in the light most favorable to the non–moving party and draw all reasonable inferences in his favor. Id. at 255.

## III.   DISCUSSION

Petitioner objects to the R&R on two grounds, arguing that the magistrate judge erred in finding that: (1) petitioner did not have a viable ineffective assistance of counsel claim based on trial counsel's failure to call Eric Brown ("Brown") as a witness to bolster petitioner's self-defense claim; and (2) petitioner did not have a viable ineffective assistance of counsel claim based on trial counsel's deficiency in persuading petitioner to accept the guilty plea offer of fifteen years to manslaughter, and trial counsel's deficiency in failing to get the plea offer reinstated after the trial judge ruled that the "Castle Doctrine" was inapplicable to petitioner because it was not retroactive in application. ECF No. 35. In both of these objections, petitioner claims that he was denied effective assistance of counsel at the trial stage of his case in violation of his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

### A.     Bolin's Objections to the R&R

Where ineffective assistance of counsel is a ground for relief, the habeas petitioner must prove that counsel's conduct "so undermined the proper functioning of

the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984).  To prevail on a Strickland claim, a habeas petitioner must demonstrate, first, that his counsel's representation fell below an objective standard of reasonableness under "prevailing professional norms," and second, that he was prejudiced by this deficient performance.  Id. at 687–89, 694.

Judicial scrutiny of counsel's performance must be "highly deferential to counsel's performance and evaluate the conduct from counsel's perspective at the time." Bell, 535 U.S. at 698 (quoting Strickland, 466 U.S. at 689).  The court must then determine if "the identified acts or omissions were outside the wide range of professionally competent assistance."  Strickland, 466 U.S. at 690.  Since both Strickland and § 2254 are highly deferential standards, when § 2254(d) applies the question is whether there is "any reasonable argument that counsel satisfied Strickland's deferential standard."  Burr v. Lassiter, 513 F. App'x 327, 341 (4th Cir. 2013).

### 1. Ineffective Assistance of Counsel for failing to call Eric Brown as a witness

Petitioner first argues that his trial counsel should have called Brown, who had relevant testimony to corroborate Bolin's self-defense and defense of others argument, as a witness.  ECF No. 35-1.  Petitioner argues that Brown's testimony that there was a second car on the scene that was the first to fire would have bolstered his self-defense and defense of others arguments.  ECF No. 29-8.  The court finds that it was within trial counsel's purview to determine trial strategy including which witnesses to call, and there is sufficient evidence to prove that trial counsel believed that Brown was not a credible

witness and that his testimony would not corroborate petitioner's theory of the case. Therefore, petitioner's Strickland claim fails.

The Fourth Circuit has established that it is within trial counsel's purview to call those witnesses that he believes will advance the case. See Pruett v. Thompson, 996 F.2d 1560, 1571 n. 9 (4th Cir. 1993) ("Attorneys have great latitude on where they can focus the jury's attention and what sort of mitigating evidence they can choose not to introduce."); see also United States v. Dyess, 730 F.3d 354, 364 (4th Cir. 2013) ("[W]e give counsel wide latitude in determining which witnesses to call as part of their trial strategy."). Petitioner must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Brown indicated that he observed the victims' car and a second car in front of the house and saw gunfire coming out of the second car. Brown further testified during the state PCR proceedings that a person from the second car fired the first shot who "looked like" Jeff Buck. ECF No. 1, Ex. 2 at 7. However, Buck died approximately a month and a half after the events and so there was no definitive proof that there was a second car. ECF No. 29-6. Furthermore, even though Brown maintained that there was a second car at the scene, even petitioner concedes that "some of the details varied over the course of the case." ECF No. 29-7. For example, Brown did not provide this information in his first statement to officers because he was "uncertain" that the person he saw was Buck. ECF No. 1, Ex. 2 at 7. Also, the information that Brown provided in his pre-polygraph interview and what was reflected in the polygraph report conflicted with Brown's earlier statement to officers directly after the incident, and contained "equivocation" on if he saw

8

a gun or gunfire. ECF No. 1, Ex. 2 at 9. The prosecution provided all of this information about the results of Brown's polygraph, the discrepancies between Brown's initial statement to officers and Brown's pre-polygraph interview, and Brown's comment that the gunfire did not come from the victims' vehicle. ECF No. 1, Ex. 2 at 10. The prosecution chose not to present Brown as a witness because it wanted to "cross-examine [him] on the inconsistencies in [his] statements, difficulty interviewing [him] and possible bias arising from their close relationships with the individuals involved." ECF No. 1, Ex. 2 at 11. Based on the prosecution's notes and trial counsel's own investigator's notes from interviewing Brown, trial counsel could have reasonably ascertained that Brown was not a credible witness.

While it is unclear if trial counsel personally interviewed Brown during pretrial investigation, it is also not clear that this was required under the "prevailing professional norms" in the Fourth Circuit. For the purpose of resolving ineffective assistance of counsel claims, Strickland establishes the standard as "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. In Bryant v. Scott, 28 F.3d 1411, 1417 (5th Cir. 1994), the Fifth Circuit held that an attorney must engage in a "reasonable amount" of pretrial investigation to meet this standard. Here, while there is no record that trial counsel himself ever interviewed Brown to determine first-hand his credibility as a witness, an investigator working for trial counsel's law firm did interview Brown. ECF No. 19, Ex. 10 at 135; ECF No. 1, Ex. 2 at 7. The prosecution also gave trial counsel its notes from interviewing Brown, which included the discrepancies between Brown's earlier statements provided to officers and information given in later interviews

9

discussed above. Accordingly, trial counsel's interview notes from the prosecution and his investigator's notes qualify as a "reasonable amount" of pretrial investigation.

Petitioner argues that trial counsel's failure to call Brown as a witness is not trial strategy but a "post hoc" rationalization. ECF No. 35-4. The court is not convinced. As the PCR court noted, while Brown's testimony about shots coming from a second car would have advanced petitioner's self-defense and defense of others claim, it conflicted with petitioner's own theory of the case that shots were first fired from the victim's car. ECF No. 1, Ex. 2 at 9. The cases that petitioner uses to support his ineffective assistance of counsel claim are distinguishable on this ground. In both <u>Robinson v. United States</u>, 744 F. Supp. 2d 684 (E.D. Mich. 2010) and <u>Wilson v. Greene</u>, 155 F.3d 396, 404 (4th Cir. 1998), the court ruled that trial counsel's failure to investigate witnesses who would have <u>corroborated</u> defendant's account of events was unreasonable and prejudiced the defendant. During the PCR proceeding, trial counsel testified that he did not call Brown as a witness for multiple reasons, including his determination that his own investigation did not support Brown's claim that there was a second vehicle on the scene and his belief that Brown's testimony would have hurt the defense case if Brown did not testify that he also saw shots coming from the victims' car. ECF No. 1, Ex. 2 at 11. Additionally, since Jeff Buck, the alleged driver of the second car, had died just one and a half months after the incident, there was little substantiation of the presence of a second car at all. ECF No. 29-6. Therefore, Brown's testimony would have conflicted with, rather than corroborated, petitioner's theory of the case.

Petitioner asserts that trial counsel should have called Brown to advance <u>any</u> possible theory or defense of petitioner regardless of whether counsel believed that it

10

would be successful. ECF No. 35-5. This is unpersuasive. As a matter of law, an attorney's strategic choices, based on his investigation of relevant law and facts, are "virtually unchallengeable" through an ineffective assistance of counsel claim. Strickland, 466 U.S. at 691. As a matter of logic, if petitioner's theory of the case is that the victim's car was the first to fire, it cannot also be that a second car was the first to fire. Trial counsel could not be expected to advance multiple theories of the case at once.

Finally, even if the court were to accept petitioner's argument that trial counsel was unreasonable in failing to call Brown as a witness, his claim fails under the "prejudice" prong of Strickland because he has not fulfilled his burden of establishing with "reasonable probability," or probability "sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687. In United States v. Debango, 780 F.2d 81 (D.C. Cir. 1986), the D.C. Circuit held that even if counsel's failure to interview proposed witnesses fell below prevailing professional norms, the defendant had failed to establish with "reasonable probability" that he would have been acquitted had trial counsel properly interviewed the witnesses. Here, petitioner has not established with "reasonable probability" that calling Brown as a witness would have led to his acquittal. The omission of Brown's testimony did not leave petitioner without an effective defense at trial, and petitioner has not shown how Brown's testimony would have changed the outcome of the trial. Petitioner argues that the jury's decision to return guilty verdicts on lesser-included offenses "clearly" indicates that the jury "rejected the State's theory of the case" and that "[h]ad the jury heard the testimony of [Brown] . . . they may have acquitted petitioner on all of the charges by crediting his defenses of self-defense and/or

defense of others." ECF No. 35-6. This speculation on what the jury would have done if it had additional witness testimony does not rise to the level of "reasonable probability" that petitioner must meet to fulfill the prejudice prong of Strickland. See Williams, 529 U.S. at 391 (2000) (quoting Strickland, 466 U.S. at 669).

Given the deference afforded to counsel in making strategic decisions, petitioner cannot show trial counsel was deficient on the ground that he did not call Brown as part of his trial strategy. Even if trial counsel were deficient, petitioner fails the prejudice prong of Strickland because he has not established with "reasonable probability" that calling Brown as a witness would have led to his acquittal. Therefore, petitioner's first objection fails.

> **2.     Ineffective Assistance of Counsel for failing to persuade petitioner to accept plea offer and incorrect legal advice on the applicability of the Castle doctrine to petitioner's case**

Petitioner next argues that trial counsel was ineffective in persuading him to take the plea offer of a 15-year sentence for manslaughter. He also argues that trial counsel was ineffective for failing to get the plea deal reinstated after the trial judge ruled that the so-called "Castle Doctrine" statute, the Protection of Persons and Property Act, S.C. Code Ann. § 16-11-410 et seq. (effective June 9, 2006), ("the Act"), was inapplicable in this case because it was not retroactive in its application. ECF No. 35 at 6-13. Both of these arguments fail the Strickland test.

As a threshold issue, respondent has asserted a procedural bar to petitioner's arguments that trial counsel was ineffective for leading petitioner to believe that he could prevail under the Act on appeal and that fifteen years was a "high" offer for a plea agreement. ECF No. 31-36. Petitioner asserts that this claim is not procedurally barred

because it was sufficiently raised to the state courts.  ECF No. 35-6.  Under AEDPA, a petitioner must exhaust all available state court remedies to properly assert his claims in federal court.  28 U.S.C. § 2254(b)(1)(A).  A federal habeas court cannot review "unexhausted claims" that would be treated as procedurally barred by state courts without either cause and prejudice or a fundamental miscarriage of justice.  <u>Longworth v. Ozmint</u>, 377 F. 3d 437, 447–48 (4th Cir. 2004).  Under South Carolina law, a petitioner may present only those issues in a federal petition for habeas relief that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.  <u>See</u> <u>State v. McKennedy</u>, 559 S.E.2d 850 (S.C. 2002).

As evidenced by the text of the PCR court's decision, it did consider whether petitioner was entitled to post-conviction relief because trial counsel was deficient in his efforts to "get (Applicant) to accept a guilty plea offer of 15 years to manslaughter" and "failing to attempt to get the plea offer reinstated after the trial judge ruled the 'Castle Doctrine' statute did not apply to this case because the statute was prospective in its application only."  <u>See</u> ECF No. 1, Ex. 2 at 21.  The PCR court considered trial counsel's advice to petitioner regarding the applicability of the Act in its ruling, and ultimately denied petitioner's claim that trial counsel was deficient for failing to convince him to accept the plea offer.  ECF No. 1, Ex. 2 at 21.  In the petitioner's writ for certiorari to the South Carolina Supreme Court, petitioner argues that the "PCR court erred in finding that trial counsel was not ineffective for failing to ascertain that the 'Castle Doctrine' statute did not apply to the case.  This deficient representation led to petitioner rejecting a 15-year plea offer in favor of relying on the act that was clearly not applicable."  ECF No.

19, Ex. 3 at 2.  Therefore, since petitioner's claim was raised and denied during the PCR hearing, and it was raised on certiorari, the court finds that there is no procedural bar to petitioner's claim.

### a. Ineffective for failing to convince petitioner to take plea offer

Petitioner argues that trial counsel did not do enough to convince the petitioner to take the plea deal of 15 years for his voluntary manslaughter charge.  ECF No. 35-13.  The Sixth Amendment right to counsel applies during the plea bargaining stage, and the Supreme Court has held that prejudice occurs when the defendant would have accepted a plea that would have resulted in a less severe conviction, sentence, or both, if it were not for counsel's deficient advice.  Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012).  However, the record indicates that counsel actually took great pains to suggest that petitioner accept the 15-year plea offer.  Trial counsel made arrangements for petitioner's family to meet with him to discuss the plea offer, and advised the family that he recommended petitioner take the plea offer.  ECF No. 1, Ex. 2 at 23.  The prosecution confirmed that trial counsel looked "dejected" when he returned to the courtroom after petitioner rejected the plea offer.  Id.  Accordingly, the court finds that petitioner rejected the plea offer despite trial counsel's recommendation, and that he did so freely, knowingly, and voluntarily.

> b. **Ineffective in failing to get plea offer reinstated after trial court's ruling that the "Castle Doctrine" was inapplicable in petitioner's case**

Petitioner next argues that trial counsel was ineffective for failing to get the plea offer reinstated after the trial court ruled that Act was inapplicable in his case because it was not retroactive. ECF No. 29 1, Ex. 1 at 3.

In Lafler, both parties conceded that the performance of respondent's counsel was deficient when he advised respondent to reject the plea offer on the grounds he could not be convicted at trial, thus fulfilling the performance prong of Strickland. Lafler, 132 S. Ct. at 1384. Since the deficiency of trial counsel is still an open question here, the court examines it further. The Castle doctrine was codified into law in South Carolina by the enactment of the Act in 2006. It provides that the use of deadly force is lawful under certain circumstances, and that there is no duty to retreat if (1) the person is in a place where he has a right to be, including the person's place of business, (2) the person is not engaged in an unlawful activity, and (3) the use of deadly force is necessary to prevent death, great bodily injury, or the commission of a violent crime. S.C. Code § 16-11-410 et seq. There is nothing in the text of the statute to indicate that it applies retroactively. Additionally, retroactivity of statutes is rare under traditional statutory construction principles. See e.g. Bowen v. Georgetown Univ. Hospital, 488 U.S. 204, 208 (1988) ("Retroactive legislation has always been looked upon with disfavor."); Am. Nat. Fire Ins. Co. v. Smith Grading & Paving, Inc., 454 S.E.2d 897, 899 (1995) ("A statute is not to be applied retroactively unless that result is so clearly compelled as to leave no room for doubt.). Finally, a savings clause that was published upon enactment of the statute specifically states that the Act would not apply retroactively:

15

> The repeal or amendment by this act of any law, whether temporary or permanent or civil or criminal, does not affect pending actions, rights, duties, or liabilities founded thereon, or alter, discharge, release or extinguish any penalty, forfeiture, or liability incurred under the repealed or amended law, unless the repealed or amended provision shall so expressly provide.

S.C. Code § 16-11-410-4. When asked if he had researched whether the Act was retroactive before advising petitioner that he had a viable claim on appeal under the doctrine, trial counsel answered that he was sure that he had but that "did not recall" researching the issue. ECF No. 19, Ex. 11 at 12. At the state PCR proceeding, trial counsel stated that he hoped the Act would apply retroactively but acknowledged that it contained a saving clause that "could be interpreted as unfavorable" to retroactive application. ECF No. 1, Ex. 2 at 26. For an attorney to "not recall" researching if a statute that he was advising his client to use as a defense was actually applicable in the client's case is certainly not ideal.

However, because AEDPA and Strickland provide dual, overlapping standards for review of a state prisoner's habeas petition, the federal court must be doubly deferential to the state court decisions. Richardson v. Branker, 668 F.3d 128, 139 (4th Cir. 2012) (citing Richter, 131 S. Ct. at 788). The court must determine "not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 131 S. Ct. at 788; see also Cullen v. Pinholster, 131 S. Ct. 1388, 1410–1411 (2011). The court must be mindful that "an unreasonable application of federal law is different from an incorrect application of federal law." Richter, 131 S. Ct. at 785 (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)). Under the doubly deferential standard described in Richter and Richardson, "a state court's determination that a claim lacks merit precludes federal habeas relief so long

as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Here, it was not until 2013 in State v. Isaac, 405 S.C. 177 (2013), that the South Carolina Supreme Court definitively ruled that the Castle doctrine did not apply retroactively. Thus, the PCR court's determination that trial counsel was not deficient for not realizing that the Act was not retroactive during the trial and the appeal process, all of which transpired before the South Carolina Supreme Court decided Isaac, was reasonable. Further, the PCR court found that the prosecutor "did not and would not have agreed to the guilty plea" after petitioner rejected the initial 15-year plea offer. ECF No. 1, Ex. 1 at 22.

      Petitioner's counterfactual arguments about what he would have done if he had been provided with better legal advice do not outweigh the double deference that the court owes to the PCR court's ruling. As a result, his second objection is overruled.

## IV.   CONCLUSION

For the reasons set forth above, the court **ADOPTS** the magistrate judge's R&R, **DENIES** the petition for a writ of habeas corpus, and **GRANTS** respondent's motion for summary judgment.

**IT IS FURTHER ORDERED** that a certificate of appealability is denied because petitioner has failed to make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

**AND IT IS SO ORDERED**.

                                                    **DAVID C. NORTON**
                                                    **UNITED STATES DISTRICT JUDGE**

**September 29, 2016**
**Charleston, South Carolina**